Krista R. Hemming, SBN 304213
THE HEMMING FIRM
222 West 6th Street
San Pedro, Ca 90731
Tel: (949) 903 - 7650
Fax: (949) 258 - 5963
E-mail: thehemmingfirm@gmail.com
*(Pro Hac Vice Approved 12/4/2019)*

Attorney for Plaintiff
KINO BONELLI

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| KINO BONELLI<br><br>Plaintiff,<br><br>v.<br><br>GRAND CANYON UNIVERSITY; GRAND CANYON EDUCATION, INC.; GRAND CANYON UNIVERSITY CAMPUS POLICE AND PUBLIC SAFETY; BRIAN MUELLER; JOE YAHNER; KENNY BYERS; MICHAEL MARTINEZ; Officer ROBINSON; Officer WASHINGTON; Sergeant BRISTLE; Sergeant WILEY; Officer M. GRUPE; and STEVE YOUNG, Individually, and in their capacity as officers and agents for Grand Canyon University and Grand Canyon University, INC.<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES BASED ON:**<br><br>1) **VIOLATION OF FOURTH AMENDMENT – 42 U.S.C. § 1983 (Unlawful Seizure)**<br>2) **VIOLATION OF FOURTH AMENDMENT – 42 U.S.C. § 1983 (Unlawful Seizure)**<br>3) **VIOLATION OF FIRST AMENDMENT 42 U.S.C. § 1983**<br>4) **VIOLATION OF CIVIL RIGHTS - 42 U.S.C. § 1981**<br>5) **VIOLATION OF CIVIL RIGHTS TITLE VI –42 U.S.C. § 2000d**<br><br>**JURY TRIAL DEMANDED** |

Now comes Plaintiff KINO BONELLI, by and through Counsel, and moves the Court for entry of judgement in his favor against defendants and in support of such Complaint states the following:

## JURISDICTION AND VENUE

This action is brought pursuant to 42 U.S.C. §§ 1983 & 1981, Title VI of the 1964 Civil

- 1 -
**PLAINTIFF'S COMPLAINT FOR DAMAGES**

Rights Act as well as the Fourth, and Fourteenth Amendments to the United States Constitution.

1. The United States District Court for the District of Arizona has jurisdiction over this action pursuant to:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil action arising under the Constitution, laws or treaties of the United States;

    b. 28 U.S.C. § 1343, which gives district court's original jurisdiction over action to secure civil rights extended by the United States government;

    c. 28 U.S.C. § 1367(a), which gives district court's supplemental jurisdiction to hear pendant State tort claims arising under State law.

2. The incidents complained of in this action occurred in the County of Maricopa, State of Arizona, within the territorial jurisdiction of this court, therefore venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

## **PARTIES**

3. Plaintiff KINO BONELLI (hereinafter "Mr. Bonelli" and/or "plaintiff") is a natural person, who, at all times complained of in this action, is a resident of Maricopa County, State of Arizona.

4. Defendant, GRAND CANYON UNIVERSITY (hereinafter "GCU"), is an Arizona corporation, organized and existing under the laws of the State of Arizona with its principal place of business in Phoenix, State of Arizona, County of Maricopa, and the employer of the individual officer named as Defendants in this action.

5. Defendant GRAND CANYON EDUCATION, INC. (hereinafter "GCU INC.") is a public traded holding company that does business as Grand Canyon University and is traded on

THE HEMMING FIRM
222 WEST 6TH STREET, STE 400
SAN PEDRO, CA 90731

the NASDAQ as "LOPE." GCU INC. is registered to do business in Arizona and can be served with process via its agent Corporation Service Company, 8825 N 23 Avenue, Suite 100, Phoenix, Arizona 85021. At all times complained of herein the GCU INC. was the employer of the individual officer named as Defendant in this action.

6. Defendant BRIAN E. MUELLER (hereinafter, "MUELLER") is at all times complained of herein the President and CEO of GCU INC, acting in his individual capacity and within the course and scope of his official capacity as an employee of defendants GCU and GCU INC.

7. Defendant GRAND CANYON UNIVERSITY CAMPUS POLICE AND PUBLIC SAFETY DEPARTMENT (hereinafter "GCU POLICE") is an independent police force existing within GCU and GCU INC and is the official police agency for the GCU and GCU INC, and at all times complained of herein the employer of the individual officers named in this action.

8. Defendant JOE YAHNER (hereinafter "YAHNER") is at all times complained of herein the Director of Public Safety/Police Chief for GCU POLICE, acting in his individual capacity and within the course and scope of his official capacity as an employee of Defendants GCU, GCU INC and GCU POLICE.

9. Defendant KENNY BYERS (hereinafter "BYERS") is at all times complained of herein the Campus Safety Manager for GCU Public Safety, acting in his individual capacity and within the course and scope of his official capacity as an employee of Defendants GCU, and GCU INC.

10. Defendant MICHAEL MARTINEZ (hereinafter "MARTINEZ") is at all times complained of herein the Campus Safety Supervisor for GCU Public Safety, acting in his

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

individual capacity and within the course and scope of his official capacity as an employee of Defendants GCU, and GCU INC.

11. Defendant Officer ROBINSON (hereinafter, "ROBINSON") is at all times complained of herein a public safety police officer for Defendants GCU, GCU INC and GCU POLICE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with Defendants GCU, GCU INC and GCU POLICE.

12. Defendant Officer WASHINGTON (hereinafter, "WASHINGTON") is at all times complained of herein a public safety police officer for Defendants GCU, GCU INC and GCU POLICE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with Defendants GCU, GCU INC and GCU POLICE.

13. Defendant Sergeant BRISTLE (hereinafter, "BRISTLE") is at all times complained of herein a public safety police officer and Sergeant for Defendants GCU, GCU INC and GCU POLICE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with Defendants GCU, GCU INC and GCU POLICE.

14. Defendant Sergeant S. WILEY (hereinafter, "WILEY") is at all times complained of herein a public safety police officer and Sergeant for Defendants GCU, GCU INC and GCU POLICE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with Defendants GCU, GCU INC and GCU POLICE.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

15. Defendant Officer M. GRUPE (hereinafter, "GRUPE") is at all times complained of herein a public safety police officer for Defendants GCU, GCU INC and GCU POLICE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with Defendants GCU, GCU INC and GCU POLICE.

16. Defendant STEVE YOUNG (hereinafter "YOUNG") is at all times complained of herein the Campus Safety Manager for GCU Public Safety, acting in his individual capacity and within the course and scope of his official capacity as an employee of Defendants GCU, and GCU INC.

## FACTUAL ALLEGATIONS

17. On or about August of 2013, Mr. Bonelli began his studies at GSU- Phoenix as a transfer student from the University of the Virgin Island – St. Croix.

18. On or about February 19, 2017, Mr. Bonelli was entering campus through the main entrance on 33rd Avenue. As there was an event on campus that day and Campus Public Safety Officer ROBINSON was checking in cars.

19. Mr. Bonelli was walking towards the main guard tower, where a few guards were standing, when Officer ROBINSON ordered Mr. Bonelli show is ID. Mr. Bonelli, held up his student ID card so that Officer ROBINSON could see it.

20. Officer ROBINSON, who was across a lane of traffic demanded Mr. Bonelli cross the street to present his ID to Officer ROBINSON.

21. There was no cross walk, nor was there a way for Mr. Bonelli to safely cross over to where Officer ROBINSON was standing.

22. Mr. Bonelli then stated that he was going to continue forward and show his ID to the other Campus Officers standing ahead.

23. Officer ROBINSON became overly aggressive and began cussing at Mr. Bonelli stating he "needed to show his fucking ID".

24. Knowing the hostile nature of GCU POLICE, Mr. Bonelli retreated and attempted to enter campus through an alternative entrance.

25. Mr. Bonelli walked to the entrance on 34th Avenue and again attempted to enter campus. This time Mr. Bonelli was stopped by GCU Campus Safety Officers WILEY and WASHINGTON.

26. Officers WASHINGTON and WILEY stopped Mr. Bonelli and demanded his student identification.

27. Again, when asked to present ID, Mr. Bonelli presented both his student ID and his state issued ID.

28. At this time Mr. Bonelli explained why he did not cross the street, into traffic to show Officer ROBINSON his ID, and that he was attempting to show ID to the officers further down the street.

29. Mr. Bonelli expressed his frustration about the treatment he received and was receiving from GCU POLICE and indicated that he was going to file a formal complaint regarding the officers unprofessional and aggressive behavior.

30. Officer WASHINGTON stated that "since I'm unprofessional, and you are going to report me, I'm keeping your ID and you will never come back on campus."

31. Officer WASHINGTON then confiscated Mr. Bonelli's student ID and denied him entry onto the campus.

32. On or about February 27, 2017, GCU Student Conduct Coordinator Alan Boelter contacted Mr. Bonelli by email to discuss the Feb 19th incident. Alan Boelter told Mr. Bonelli to come to campus to discuss his involvement with an incident a possible student policy violation.

33. The alleged violation: "Failure to Comply"; the claim: he refused to show ID.

34. Mr. Bonelli informed Boelter that he would be more than happy to speak with him regarding the incident, however, he could not attend the in-person because GCU POLICE had seized his GCU Student Identification Card.

35. Mr. Bonelli stated it was not possible that he "failed to comply" by not giving his ID, as they have his ID.

36. Mr. Boelter contacted GCU POLICE and discovered they did have Mr. Bonelli's student ID.

37. Mr. Boelter retrieved Mr. Bonelli's student identification card and returned it to him.

38. Finding the Mr. Bonelli did indeed comply, no further discussion regarding the February incident was had.

39. On or about April of 2017, Mr. Bonelli completed his Bachelor of Science degree and on or about July 13, 2017, Mr. Bonelli began graduate studies at GCU.

40. On or about July 25, 2017, in the early hours of the morning, Mr. Bonelli was studying on campus in an area open to all students.

41. Mr. Bonelli was contacted by GCU POLICE Officer GRUPE.

42. During this contact Mr. Bonelli was cooperative and compliant, and presented ID.

43. Officer GROUPE ran Mr. Bonelli's name through the system and found that he was enrolled but was not living on campus.

44. Officer GROUPE stated that student policy states commuter students were not allowed on campus during certain times.

45. There is no such GCU policy.

46. Mr. Bonelli stated he was not aware of such a policy and would leave because he did not want to violate student policy.

47. Officer GROUPE told Mr. Bonelli that he would allow him to stay, however Mr. Bonelli declined and left campus immediately.

48. On or about July 30, 2017, five day after the second incident and five months after the first incident, GCU Campus Safety Supervisor MARTINEZ issued a campus BOLO for Mr. Bonelli.

49. The BOLO stated that in February, Mr. Bonelli, a non-student (proven untrue), tried to gain access onto campus without showing ID (proven untrue); became disorderly and combative; refused to leave and then was trespassed (proven untrue).

50. The BOLO also stated that he was a former student that graduated in 2016 (proven untrue); and is known to use his old GCU student ID to gain access onto campus.

51. Mr. Bonelli contacted the Dean of his program in an attempt to get the BOLO lifted so he could attend class.

52. The BOLO was lifted on or about August 7, 2017.

53. On or about August 10, 2017, Mr. Bonelli was contacted by the Office of Academic Compliance at GCU, with official notification that Mr. Bonelli was reported to GCU for violations of the Student Code of Conduct and Academic Standards, for "behaving in any manner that creates a disruption, or hostile or offensive educational environment for a student, faculty member, or staff member," and "failing to comply promptly with any reasonable directive from a faculty member or University Official."

54. Mr. Bonelli disputed the allegation, and submitted multiple written reports, via email, detailing the February incident, how it was unfounded because GCU POLICE had his Student ID, and the July Incident with GCU POLICE.

55. The Office of Academic Compliance followed up with GCU POLICE regarding Mr. Bonelli's version of events, specifically the February incident.

56. Defendant YOUNG, despite knowing that GCU POLICE had confiscated Mr. Bonelli's ID in February, and despite knowing that the GCU POLICE officers lied in their incident report and BOLO, which later had to be lifted, replied to the Office of Academic Compliance stating "I find no validity in Mr. Bonelli's statements…I stand behind the memo's and incident reports that were presented. I see no dishonesty of the officers names mentioned in these documents."

57. On or about August 24, 2017, Mr. Bonelli received notification that the Office of Academic Standards had investigated the reports of student misconduct and had found merit in the violation.

58. Mr. Bonelli was issued an "Official Disciplinary Warning."

59. Mr. Bonelli was also informed that this was his "first and only warning to correct this behavior…if additional incidents occur, you are subject to additional measures including, but

not limited to, removal from a course, removal from your program of study, failing grades, suspension and expulsion.

60. Mr. Bonelli did not violate GCU Policy.

61. It would take Mr. Bonelli over a year to clear his name.

62. It was not until Mr. Bonelli came in contact with the Vice President and Dean of Institutional Effectiveness Dr. Antoinette Farmer-Thompson, that Mr. Bonelli was able to get the disciplinary action dismissed.

63. After listening to Mr. Bonelli's story, Dr. Farmer undertook an investigation and found Mr. Bonelli had been truthfully, and had experienced severe civil rights violations including racial profiling, discrimination and defamation.

64. Finally, on or about August 29, 2018, Dr. Farmer able to get the "Disciplinary Warning" removed.

65. As a result of the above described incidents Mr. Bonelli suffered great emotional and physical distress.

66. Mr. Bonelli feared retaliation from GCU, GCU POLICE and GCU staff and employees for speaking up, and for getting the disciplinary warning removed.

67. Since that time Mr. Bonelli has been under the care of a mental health professional and is being treated for depression, anxiety and PTSD associated with egregious behavior of GCU employees and staff.

68. Due to his mental health, and the past incidents with GCU POLICE and Staff, Mr. Bonelli was scared to attend classes on campus, rather he incurred additional fees to take online classes.

69. Additionally, Mr. Bonelli was unable to use on-campus resources and facilities such as the library, study rooms, computers, equipment, cafeteria or bookstore; as a result, Mr. Bonelli's grades suffered.

70. The forgoing factors delayed Mr. Bonelli graduation and he was unable to procure meaningful employment as planned.

71. Mr. Bonelli finally completed his studies on or about March 20, 2019.

72. Mr. Bonelli suffered continuous and ongoing injury up to, and until his graduation from GCU on or about March 20, 2019.

### FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourth Amendment Right –
### Unreasonable Seizure of Person/Property
### (Plaintiff as to Defendants GCU POLICE, YAHNER, ROBINSON, WASHINGTON, BRISTLE, WILEY)

73. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 72, inclusive, above, as though set forth in full herein.

74. Mr. Bonelli has a well-established, constitutionally protected right to be free from unreasonable seizures of the person and property.

75. Defendants acting under the color of law deprived Mr. Bonelli of his constitutionally protected right on February 27, 2017 when they unreasonable detained Mr. Bonelli absent probable cause or reasonable suspicion.

76. Defendants acting under the color of law further deprived Mr. Bonelli of his constitutional protected rights when they seized his personal property.

77. The seizure of Mr. Bonelli and his property was unreasonable in that, Defendants did not have a warrant, did not observe the plaintiff engage in any criminal conduct, did not have probable cause, or any objective facts to form a basis for reasonable suspicion to believe Mr. Bonelli had engaged in, was engaging in, or was about to engage in any criminal conduct.

78. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Bonelli's clearly established rights protected by the Fourth Amendment and Fourteenth Amendment to the U.S. Constitution.

79. As a direct and proximate result of the acts described above, Mr. Bonelli has suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional injury, distress, pain and suffering, 3) lost wages 4) attorney's fees, and 5) any other special and general damages and expenses, in an amount to be proven at trial.

80. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
**Violation of Fourth Amendment Right –**
**Unreasonable Seizure of Person**
**(Plaintiff as to Defendants GCU POLICE, YAHNER, GRUPE)**

81. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 80, inclusive, above, as though set forth in full herein.

82. Mr. Bonelli has a well-established, constitutionally protected right to be free from unreasonable seizures of the person.

83. Defendants acting under the color of law deprived Mr. Bonelli of his constitutionally protected right on July 25, 2017 when they unreasonable detained Mr. Bonelli absent probable cause or reasonable suspicion.

84. The seizure of Mr. Bonelli was unreasonable in that, Defendants did not have a warrant, did not observe the plaintiff engage in any criminal conduct, did not have probable cause, or any objective facts to form a basis for reasonable suspicion to believe Mr. Bonelli had engaged in, was engaging in, or was about to engage in any criminal conduct.

85. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Bonelli's clearly established rights protected by the Fourth Amendment and Fourteenth Amendment to the U.S. Constitution.

86. As a direct and proximate result of the acts described above, Mr. Bonelli has suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional injury, distress, pain and suffering, 3) lost wages 4) attorney's fees, and 5) any other special and general damages and expenses, in an amount to be proven at trial.

87. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
#### Violation Of First Amendment Right – Free Speech
**(Plaintiff as to Defendants GCU POLICE, YAHNER, ROBINSON, WASHINGTON, BRISTLE, WILEY, GRUPE, YOUNG, MARTINEZ, BYER)**

88. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 87, inclusive, above, as though set forth in full herein.

89. Mr. Bonelli was exercising his First Amendment rights on February 27, 2017 when he expressed his displeasure at GCU POLICE and Officers. Mr. Bonelli expressed that he would further be exercising his First Amendment right to redress grievances by formally complaining to GCU about GCU POLICE Officers, and their behavior.

90. Defendants ROBINSON, WASHINGTON, BRISTLE and WILEY sought to chill Mr. Bonelli's free speech rights by seizing his student ID so that he cannot enter campus and make his complaint.

91. This act was also in retaliation against the Mr. Bonelli for freely exercising his first amendment rights.

92. Defendant in retaliation for Mr. Bonelli exercising his free speech rights issued a BOLO restricting Mr. Bonelli from entering campus.

93. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Bonelli's clearly established rights protected by the First Amendment, and Fourteenth Amendment to the U.S. Constitution.

94. As a direct and proximate result of the acts described above, Mr. Bonelli has suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional injury, distress, pain and suffering, 3) lost wages 4) attorney's fees, and 5) any other special and general damages and expenses, in an amount to be proven at trial.

95. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981**

## Racial Discrimination
### (Plaintiff as to ALL Defendants)

96. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 95, inclusive, above, as though set forth in full herein.

97. Mr. Bonelli is a member of several protected classes to include race (black) and national origin (Virgin Islands).

98. Defendants individually and collectively racially profiled, targeted and discriminated against Mr. Bonelli because of his race and national origin.

99. Defendants individually and collectively, intentionally denied Mr. Bonelli access to the GCU campus, his classes, his professors, and educational facilities on multiple occasions, which he contracted to use and accesses by and through his numerous student contracts entered into with GCU.

100. GCU and GCU INC. is liable for the acts, omissions and conduct of their employees, who were acting under the authority and employment of GCU when their negligent, intentional or willful conduct occurred which caused Mr. Bonelli's violation of rights and personal injury.

101. As a direct and proximate result of the acts described above, Mr. Bonelli has suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional injury, distress, pain and suffering, 3) lost wages 4) attorney's fees, and 5) any other special and general damages and expenses, in an amount to be proven at trial.

102. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
**VIOLATION OF 42 U.S.C. § 2000d**
**TITLE VI: Racial Discrimination**
**(Plaintiff as to ALL Defendants)**

103. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 102, inclusive, above, as though set forth in full herein.

104. Mr. Bonelli is a member of several protected classes to include race (black) and national origin (Virgin Islands).

105. Defendants individually and collectively racially profiled, targeted and discriminated against Mr. Bonelli because of his race and national origin.

106. Mr. Bonelli was singled out because of his race and national origin by the Defendant Officers, and unlawfully detained and the subject of multiple false reports, to include a BOLO designed to keep Mr. Bonelli off campus and limit his access to his education, and the free exercises of his civil and constitutionally protected rights.

107. Defendants individually and collectively intentionally denied Mr. Bonelli access to the GCU campus, his classes, his professors, and educational facilities on multiple occasions, based solely on his race and national origin.

108. GCU and GCU INC. is liable for the acts, omissions and conduct of their employees, who were acting under the authority and employment of GCU when their negligent, intentional or willful conduct occurred which caused Mr. Bonelli's violation of rights and personal injury.

109. As a direct and proximate result of the acts described above, Mr. Bonelli has suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional

injury, distress, pain and suffering, 3) lost wages 4) attorney's fees, and 5) any other special and general damages and expenses, in an amount to be proven at trial.

110. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

## JURY DEMAND

111. Plaintiff hereby demands a trial by jury for all issues that are so triable.

## DAMAGES AND ATTORNEY'S FEES

112. Plaintiffs hereby realleged and incorporate by reference the allegations set forth in paragraphs 1 through 59, inclusive, above, as though set forth in full herein.

113. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered deprivations of his constitutional rights guaranteed by the First, Fourth and Fourteenth Amendments to the U. S. Constitution.

114. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered racial discrimination which lead to the denial of services, denial of accesses to educational facilities and the enforcement of contracts as guaranteed by Federal Law.

115. Plaintiff incurred damages for loss of reputation, shame, embarrassment, humiliation, mental anguish, lost wages, and such other compensatory and consequential damages as the law entitles them to recover.

116. Alternatively, Plaintiff seek nominal damages for the violations of his Constitutional rights.

117. Plaintiffs seek punitive damages against the individual Defendants for their intentional, willful and wanton acts violating "clearly established statutory and constitutional rights of which a reasonable officer would have known."

118. Plaintiffs hereby sues for these damages and prays for just and fair recovery thereof.

119. Plaintiffs are an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgement against Defendants as follows:

A. Issue a judgement declaring that the acts of the Defendants described herein Violated Plaintiff's Constitutional and Civil Rights;

B. For an award of compensatory damages in favor of plaintiff an amount to be shown at trial, in excess of $10,000,000 against all defendants;

C. For an award of punitive / exemplary damages in an amount to be shown at trial against all defendants, in an amount to be shown at trial, in excess of $10,000,000;

D. Cost of suit;

E. Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988(b);

F. Such other relief as this Honorable Court may deem just and appropriate.

THE HEMMING FIRM

DATED: January 20, 2020    By: _____
KRISTA R. HEMMING
Attorneys for
**PLAINTIFF**